This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40701

**IVORY LYNN CONRAD,**

　　　Petitioner-Appellant,

v.

**VALENTIN BORISSEVITCH,**

　　　Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Amber Chavez Baker, District Court Judge**

Kalm Law Firm, P.C.
C. James Kalm
Thomas L. Kalm
Albuquerque, NM

for Appellant

Stephen P. Eaton
Albuquerque, NM

for Appellee

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Petitioner Ivory Lynn Conrad (Mother) appeals the district court's order adopting the domestic relations hearing officer's report. Mother argues that the district court (1) abused its discretion in adopting the hearing officer's improperly calculated income for Respondent Valentin Borissevitch (Father); (2) erred in limiting child support interest; and (3) inappropriately denied costs and attorney fees. We agree with Mother's first argument and part of her second argument. Accordingly, we reverse and remand in part and affirm in part.

**{2}** Because this nonprecedential memorandum opinion is issued solely for the benefit of the parties, we presume they are familiar with the facts and procedural history of this case, and we do not provide a general background.

## DISCUSSION

### I. The District Court Abused Its Discretion in Adopting the Hearing Officer's Improperly Calculated Income for Father

**{3}** Mother raises two issues concerning the district court's adoption of Father's income as calculated by the hearing officer: (1) the calculation deviated from the child support guidelines by averaging Father's income from the last six years, while excluding Father's unusually high 2021 income, and (2) the calculation improperly excluded Father's rental income. As we explain, we agree with Mother in both respects and reverse for the district court to properly calculate Father's income based on the child support guidelines.

**{4}** "The setting of child support is left to the sound discretion of the [district] court as long as that discretion is exercised in accordance with the child support guidelines." *Quintana v. Eddins*, 2002-NMCA-008, ¶ 9, 131 N.M. 435, 38 P.3d 203. "[E]ven when we review for an abuse of discretion, our review of the application of the law to the facts is conducted de novo. Accordingly, we may characterize as an abuse of discretion a discretionary decision that is premised on a misapprehension of the law." *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 7, 127 N.M. 654, 986 P.2d 450 (alteration, internal quotation marks, and citation omitted).

**{5}** As to the first issue, Mother argues that the hearing officer impermissibly deviated from the child support guidelines in calculating Father's income by using a multi-year average, which excluded his 2021 income. Father responds that *Jury v. Jury*, 2017-NMCA-036, 392 P.3d 242, supports the use of a multi-year average to determine his income and that the exclusion of his 2021 income was proper because the report included the rationale used. We agree with Mother and explain.

**{6}** "Calculation of the parties' gross monthly incomes must conform to the child support guidelines or precedential appellate court interpretation of the child support guidelines." *Id.* ¶ 3. Accordingly, district courts do not have any discretion to deviate from the guidelines in calculating the parties' gross monthly income. *Id.* The child support guidelines define gross income as "income from any source," NMSA 1978, § 40-4-11.1(C)(2) (2008, amended 2021),1 and provide two methods for determining income. First, district courts must use the party's current income if the income is steady. Section 40-4-11.1(K). However, "[i]f income varies a lot from month to month," the guidelines direct courts to "use an average of the last twelve months, if available, or last year's income tax return." *Id.* Here, the district court adopted a calculation that averaged

---

1All citations throughout this opinion to Section 40-4-11.1 are to the 2008 version, unless otherwise indicated.

his income from 2015 through 2020—excluding Father's income from 2021, the entire previous year—to determine the imputed income.

**{7}** Father contends that in *Jury*, 2017-NMCA-036, ¶¶ 31, 50, this Court "acknowledge[d] that income averaging over multiple years is used and acceptable." We disagree with Father's application of *Jury*. In *Jury*, this Court recognized that while other jurisdictions allow multi-year averaging in cases where a party's income fluctuates, "no New Mexico appellate court has expressly considered the appropriateness of multi-year averaging." *Id.* ¶ 31. Furthermore, this Court declined to review the issue because "we [did] not have the benefit of briefing on the topic." *Id.* ¶ 50. Nevertheless, this Court rejected a ten-year average in calculating income because other jurisdictions did not permit it and because this Court was "unable to recreate the district court's calculation." *Id.*

**{8}** In this case, Father fails to cite any New Mexico or out-of-state authority that permits determining a party's income by excluding an anomalous year from a multi-year average, and therefore we assume none exists. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Furthermore, beyond arguing that *Jury*, 2017-NMCA-036, ¶¶ 31, 50, allowed multi-year averaging, Father does not brief whether the child support guidelines allow multi-year averaging in cases where a party's income fluctuates; therefore we decline to review the issue. *See id.* ¶ 50 (declining to review the issue because the parties did not provide briefing on the topic); *see also Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (explaining that appellate courts do not review undeveloped arguments). In short, no authority supports a district court's prerogative to exclude an entire year's income in arriving at an imputed income's average. Therefore, it was error for the district court to do so.

**{9}** Father also argues that the adopted calculation should be affirmed because the "means and method for calculating Father's income . . . [were] explained, outlined, and reproducible." This argument is irrelevant to the issue at hand. A deviation explanation is only required when the district court *properly* deviates from the child support guidelines. Section 40-4-11.1(A) ("Every decree or judgment of child support that deviates from the guideline amount shall contain a statement of the reasons for the deviation."). As explained above, the district court did not have discretion to deviate in calculating Father's income and therefore any explanation by the district court is inconsequential.

**{10}** As to her second claim of error regarding the district court's method of calculating imputed income, Mother argues that "the exclusion of rental income was based upon a misapprehension of the law." Father responds that the district court did not fail to include rental income, instead the court "took evidence and found that there was no net income from [Father's] rental properties." We agree with Mother that the hearing officer's conclusion Father did not have net income from his rental properties

inappropriately deviated from the child support guidelines, *see* § 40-4-11.1(C)(2)(b). Therefore, the district court abused its discretion in adopting the recommendation.

**{11}** The child support guidelines direct district courts to include rent gross income in determining a party's total gross income. *See id.* A party's rent gross income "means gross receipts minus ordinary and necessary expenses required to produce such income." *Id.* Pursuant to the plain language of Section 40-4-11.1(C)(2)(b), the rent payments Father received constitute "gross receipts" in calculating his "gross income." Accordingly, we must determine whether the hearing officer properly deducted "ordinary and necessary expenses" from the rent income to determine that Father did not have any rental income. *Id.*

**{12}** In *Klinksiek v. Klinksiek*, 2005-NMCA-008, ¶ 8, 136 N.M. 693, 104 P.3d 559 this Court clarified that mortgage payments that reduce the principal mortgage indebtedness while increasing equity in the property are not "ordinary and necessary expenses" as required by Section 40-4-11.1(C)(2)(b). Here, the hearing officer did not include as gross receipts the mortgage payments that increased the equity of the property, as required by *Klinksiek*, 2005-NMCA-008, ¶ 8. Instead, the hearing officer categorically determined that Father did not have any rent income based on Father's testimony, mortgage statements, and tax filings. Accordingly, in adopting the hearing officer's income recommendation, the district court deviated from the guidelines and thus abused its discretion. *See Jury*, 2017-NMCA-036, ¶ 3 (clarifying that district courts cannot deviate from the guidelines in calculating the parties' gross monthly income).

**{13}** On remand, the district court must recalculate Father's income based on the child support guidelines by averaging the income from the last twelve months, *see* § 40-4-11.1(K), and include Father's rental income after deducting proper ordinary and necessary expenses. *See* § 40-4-11.1(C)(2)(b). Father will be given an opportunity on remand to introduce evidence on the "ordinary and necessary" expenses he asserts should be deducted from his "gross receipts," consistent with Section 40-4-11.1(C)(2)(b). "[Father] must show not only that [the expense] is ordinary and necessary to the business, but also that it is irrelevant to calculating support obligations. Such expenses include, but are not necessarily limited to, expenses for repairs, property management and leasing fees, real estate taxes, and insurance." *Klinksiek*, 2005-NMCA-008, ¶ 9 (internal quotation marks and citation omitted).

**{14}** Finally, we note that although the district court cannot deviate from the child support guidelines in calculating Father's income, *Jury*, 2017-NMCA-036, ¶ 3, it may deviate in the total amount of child support awarded as long as the deviation is "supported by a written finding in the decree, judgment or order of child support that application of the guidelines would be unjust or inappropriate." NMSA 1978, § 40-4-11.2 (1989, amended 2021).

## II.     The District Court Abused Its Discretion in Awarding Interest Applicable Only After Father Becomes More Than Thirty Days Delinquent

**{15}** We review the district court's decision concerning child support for an abuse of discretion. *See Klinksiek*, 2005-NMCA-008, ¶ 4. Mother presents two issues regarding the interest award adopted by the district court: the hearing officer misapprehended the law in delaying interest to thirty days after delinquency and the hearing officer incorrectly declined to award interest that accrued the date of the retroactive child support judgment. We agree with Mother on the first issue, and remand to the district court for modification. However, we disagree with Mother's second issue because New Mexico law does not require retroactive child support interest to begin accruing the date of the judgment.

**{16}** Regarding the first issue, NMSA 1978, Section 40-4-7.3 (2004) controls the interest accrual of delinquent child support. Section 40-4-7.3(A) specifically directs that child support interest "shall accrue from the date the support is delinquent until the date the support is paid." Here, the hearing officer recommended and the district court adopted interest that accrues when "Father becomes more than thirty days delinquent." The hearing officer's recommendation was contrary to Section 40-4-7.3(A), and therefore the district court abused its discretion in adopting it.

**{17}** Mother's second issue argues that the interest on the retroactive child support must begin accruing on the date of the judgment. Mother starts her argument by asserting that under *Bustos v. Bustos*, 2000-NMCA-040, ¶¶ 20-21, 128 N.M. 842, 999 P.2d 1074, "interest on a child support arrearage is nondiscretionary." However, Mother later concedes that *Bustos* is distinguishable from this case. Although we are not bound by a party's concession, *Tucson Elec. Power Co. v. N.M. Tax'n & Revenue Dep't*, 2020-NMCA-011, ¶ 10, 456 P.3d 1085, we agree that *Bustos* is distinguishable and inapplicable to our case for two reasons: the controlling statutes in each case are different and Father is not delinquent on the district court's ordered child support, unlike the father in *Bustos*, 2000-NMCA-040, ¶ 4 (explaining that the father became delinquent on the district court's child support order by paying less than the ordered amount).

**{18}** In *Bustos* this Court concluded that the interest was mandatory because, based on NMSA 1978, Section 56-8-4(A) (2004), each unpaid child support installment was a final judgment and the interest was therefore a post-decree interest. *Bustos*, 2000-NMCA-040, ¶¶ 20-21. Here, Mother does not argue that there are any unpaid child support installments or that Section 56-8-4(A) applies. To the contrary, Mother concedes that Section 56-8-4(A) is not applicable in this case and instead Section "40-4-7.3 must be read to apply support obligation arising under the New Mexico Uniform Parentage Act [(UPA), NMSA 1978, §§ 40-11A-101 to -903 (2009, amended 2021)]." We agree this case arises under the UPA and therefore we apply Section 40-4-7.3. We do not agree, however, that Section 40-4-7.3, or any other authority supports automatic interest accrual on retroactive child support that is not otherwise delinquent.

**{19}** Here, the district court did not find that Father was delinquent on the child support. Father's payment status is important for two reasons. First, it further distinguishes this case from *Bustos* where the father was delinquent on the child support by paying less than the ordered amount. 2000-NMCA-040, ¶ 4. Second, without

a finding of delinquency there cannot be a consolidated judgment for delinquent child support, contradicting the second part of Mother's argument. *See* § 40-4-7.3(B) ("Interest shall accrue on a consolidated judgment for delinquent child support at the rate of four percent when the consolidated judgment is entered until the judgment is satisfied.").

**{20}**   The second part of Mother's argument attempts to reconcile different statutory language to demonstrate that Section 40-4-7.3 supports automatic accrual of interest. According to Mother, because retrospective child support is a form of arrearages per *Zabolzadeh v. Zabolzadeh*, 2009-NMCA-046, ¶ 3, 146 N.M. 125, 207 P.3d 359, the only manner to apply Section 40-4-7.3 to arrearages is by treating these "as a consolidated judgment of 'past-due'—or delinquent—support." Although retrospective child support may be considered arrearages, such arrearages can only be considered delinquent after a judgment by the district court is entered. NMSA 1978, 40-4A-2(C) (1997) (defining "'delinquency' means any payment under an order for support which has become due and is unpaid"); *see also Quantum Corp. v. N.M. Tax'n & Revenue Dep't*, 1998-NMCA-050, ¶ 8, 125 N.M. 49, 956 P.2d 848 ("[S]tatutes in question must be read in connection with other statutes concerning the same subject matter."). As discussed above, the district court did not find that Father was delinquent on the child support, and therefore there is no delinquency or consolidated judgment for delinquent child support to trigger the accrual of interest. *See* § 40-4-7.3(A), (B) (requiring delinquent child support).

**{21}**   Accordingly, because Mother fails to point to any authority—beyond *Bustos* 2000-NMCA-040, ¶¶ 20-21—that requires automatic interest accrual on retroactive child support in an absence of delinquency, the district court did not abuse its discretion in declining the accrued interest the day of the judgment. *See Klinksiek*, 2005-NMCA-008, ¶ 4.

**{22}**   We remand to the district court for an order that properly reflects the accrual of interest beginning the date upon which child support would be delinquent under Section 40-4-7.3(A).

### III.   The District Court Did Not Abuse Its Discretion in Declining to Award Costs and Attorney Fees

**{23}**   We review the district court's decision to grant or deny attorney fees in a UPA claim for an abuse of discretion. *Sisneroz v. Polanco*, 1999-NMCA-039, ¶ 27, 126 N.M. 779, 975 P.2d 392. "An abuse of discretion occurs if the [district] court's ruling is against the logic and effect of the facts and circumstances of the case." *Id.* "The [district] court should consider the nature of the proceedings involved, the complexity of the case, the ability of the parties' attorneys, and the parties' economic disparities." *Id.*

**{24}**   Mother argues that the district court abused its discretion because it construed "Mother's inability to pay . . . attorney fees . . . as a basis to deny attorney fees and costs." To support her argument Mother cites *Tedford v. Gregory*, 1998-NMCA-067, ¶

45, 125 N.M. 206, 959 P.2d 540, where this Court reversed the district court's denial of attorney fees based on the financial disparity between the parties and the appellants inability to pay the attorney fees. We disagree with Mother as we explain below.

**{25}** The district court did not base its denial on Mother's alleged inability to pay attorney fees; instead, the reason for the denial was the parties' overly aggressive management of the case. The district court highlighted that each party made the case unnecessarily litigious and therefore each should pay their own attorney fees. This is distinguishable from *Tedford*, 1998-NMCA-067, ¶ 45, where this Court concluded that "absent a finding of good cause, it was error to deny an award of attorney[] fees and costs." *Id.* The district court provided good cause for its conclusion based on the facts and circumstances of the case. Accordingly the district court did not abuse its discretion here in denying attorney fees. *See Sisneroz*, 1999-NMCA-039, ¶ 27.

**CONCLUSION**

**{26}** For the foregoing reasons, we reverse and remand in part and affirm in part.

**{27}** **IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JACQUELINE R. MEDINA, Judge**